UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

In re Buca Inc. Securities Litigation        Civil No. 05-1762 (DWF/AJB)

**MEMORANDUM
OPINION AND ORDER**

---

Avi Garbow, Esq., Daniel S. Sommers, Esq., Herbert E. Milstein, Esq., Matthew B. Kaplan, Esq., and Steven J. Toll, Esq., Cohen Milstein Hausfeld & Toll, PLLC; Lori A. Johnson, Esq., and Stacey L. Mills, Esq., Heins Mills & Olson, PLC; Jay W. Eng, Esq., Michael J. Pucillo, Esq., and Wendy H. Zoberman, Esq., Berman DeValerio Pease Tabacco Burt & Pucillo; counsel for Plaintiffs.

Michael M. Krauss, Esq., and Wendy J. Wildung, Esq., Faegre & Benson, LLP, counsel for Defendants Buca, Inc., and Pete Mihaljov; Joseph T. Dixon, Jr., Esq., and Wesley T. Graham, Esq., Henson & Efron, PA, and Kenneth J. Walsh, Esq., McDonald Hopkins Co, LPA, counsel for Defendant Joseph Micatrotto; and Douglas R. Peterson, Esq., Monica L. Davies, Esq., and Todd A. Noteboom, Esq., Leonard Street and Deinard, PA, counsel for Defendant Greg A. Gadel.

---

**INTRODUCTION**

This matter is before the Court pursuant to Motions to Dismiss the Second Amended Consolidated Complaint brought by Defendants Buca, Inc. ("Buca"), Pete Mihaljov, Greg A. Gadel, and Joseph Micatrotto (collectively, the "Individual Defendants"), and pursuant to a Motion to Strike or, in the Alternative, to File a Surreply brought by Plaintiff West Palm Beach Police Pension Fund. In the Second Amended Consolidated Class Action Complaint for Violations of the Federal Securities Laws (the "Second Amended Complaint" or "SAC"), Plaintiff West Palm Beach Police Pension Fund, individually and on behalf of all other persons similarly situated (collectively, the "Plaintiffs") allege securities fraud against Buca and the Individual Defendants

(collectively, the "Defendants") in violation of sections 10(b) and 20(a) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b) (the "Exchange Act"), and Rule 10b-5 promulgated thereunder. For the reasons set forth below, Defendants' motions are granted.

## BACKGROUND

The essential facts surrounding this matter are set forth in the Court's Memorandum Opinion and Order dated October 16, 2006 (the "October 16, 2006 Order") and are incorporated herein by reference. The matter was initially brought to the Court on Defendants' Motion to Dismiss Plaintiffs' Consolidated Amended Class Action Complaint (the "First Amended Complaint"). In the October 16, 2006 Order, the Court granted Defendants' motions to dismiss the First Amended Complaint on the grounds that Plaintiffs failed to plead loss causation or sufficient specific facts to give rise to a strong inference of scienter. Ultimately, the Court granted Plaintiffs leave to replead, which they did, and Defendants filed these motions to dismiss.

The Second Amended Complaint sets forth three theories of liability that the First Amended Complaint also relied upon. First, the Second Amended Complaint alleges that beginning early in the Class Period, Buca improperly included employee meals in its revenues in order to boost its figures for same store sales. (SAC ¶¶ 25-49.) Second, the Second Amended Complaint alleges that early in the Class Period, Buca improperly capitalized expenses in order to inflate its earnings. (*Id.* at ¶¶ 50-75.) Third, the Second Amended Complaint alleges that Buca had inadequate internal controls, hid these

deficiencies from investors, and that these deficiencies allowed Defendants to implement their scheme to defraud investors.  (*Id*. at ¶¶ 101-138.)

Otherwise, the Second Amended Complaint differs only slightly from the First Amended Complaint.  Plaintiffs no longer allege that Buca improperly accounted for the company's real estate leases and leasehold improvements.  Plaintiffs also dropped their allegation that Buca's February 11, 2005 Form 8-K was a partial corrective disclosure.  The Second Amended Complaint now includes allegations that two 2002 press releases— on July 16, 2002, and October 24, 2002—were partial corrective disclosures related to the alleged accounting scheme with employee meals.  In addition, Plaintiffs have included allegations culled from other civil and criminal actions that were brought against Defendants Micatrotto and Gadel.

## DISCUSSION

### I.     Standard of Review

The Supreme Court recently articulated a new standard for evaluating motions to dismiss in *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955 (2007).  The Supreme Court held that the standard established in *Conley v. Gibson*, 255 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief[,]" has "earned its retirement." *Twombly*, 127 S. Ct. at 1968-69.  Pursuant to *Twombly*, in order to survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." 127 S. Ct. at 1974.

Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id*. at 1964-65.  The new standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Id*. at 1965.

In deciding a motion to dismiss, a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant.  *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986).  In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. Of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged.  *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990).  A court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  *See Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

**II.    Section 10(b) Claim**

As laid out in the Court's October 16, 2006 Order, Plaintiffs allege that Defendants violated section 10(b) of the Securities Exchange Act.  Section 10(b) of the Exchange Act forbids the "use or employ, in connection with the purchase or sale of any security . . ., [of] any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors."  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,

127 S. Ct. 2499, 2508 (2007) (quoting 15 U.S.C. § 78j(b)).  Rule 10b-5, promulgated by the SEC under its section 10(b) authority, states:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange,
>
> (a) To employ any device, scheme, or artifice to defraud,
>
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, or
>
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5.  In order to bring a successful claim of securities fraud, a plaintiff must establish the following elements:  (1) material misrepresentations or omissions; (2) made with scienter; (3) in connection with the purchase or sale of securities; (4) upon which plaintiff relied; and (5) that proximately caused plaintiff's injuries.  *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1533–34 (8th Cir. 1996) (citing 17 C.F.R. § 240.10b-5 (2001)).  Here, the Court will address the issues of loss causation and scienter because these points are dispositive of the matter.[1]

### A. Loss Causation

Similar to Defendants' Motions to Dismiss the First Amended Complaint,

---

[1] Because the Court finds that the issues of loss causation and scienter are dispositive of the matter, the Court need not address Defendants' arguments regarding the statute of limitations.

Defendants here contend that the Second Amended Complaint should be dismissed because Plaintiffs have failed to sufficiently plead loss causation. A securities fraud complaint must allege loss causation, which means "a causal connection between the material misrepresentation and the loss." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342 (2005). In *Dura*, the Supreme Court held that a plaintiff cannot satisfy section 10(b)'s loss causation requirement by alleging that the purchase price was inflated because of the claimed misrepresentations. *Id.* at 345. Instead, a plaintiff must allege that the share price fell significantly after the truth became known. *Id.* at 347. Plaintiffs need not plead loss causation with particularity; rather, a short and plain statement in accordance with Federal Rule of Civil Procedure 8(a)(2) is sufficient. *See id*. at 346.

In the October 16, 2006 Order, the Court held that the First Amended Complaint did not establish loss causation under *Dura* because the four announcements referenced in the First Amended Complaint either disclosed nothing of the alleged fraud or failed to result in a significant drop in share price. The Court will not revisit its previous decision regarding these announcements.

In the Second Amended Complaint, Plaintiffs have added allegations regarding two purported corrective disclosures—from July 16, 2002, and October 14, 2002—in which Buca reported decreases in comparable store sales for the second and third quarters of 2002. (SAC ¶¶ 44-49, 139-42.) Specifically, Plaintiffs allege that on July 16, 2002, Buca announced its second-quarter 2002 results in a press release, stating that "[c]omparable restaurant sales decreased 1.3 percent for the 51 Buca di Beppo restaurants

in the comparable restaurant sales base during the 13 weeks ending June 30, 2002." (*Id.* at ¶ 44.) Plaintiffs assert that Buca's stock dropped nearly 30 percent in a day, from $13.35 per share on July 16, 2002, to $9.26 per share on July 17, 2002, in response to this news. (*Id.* at ¶ 45.) Similarly, Plaintiffs allege that Buca's October 24, 2002 press release also partially revealed the truth regarding the employee meal accounting and led to additional declines in Buca's share price. Plaintiffs contend that the October 2002 disclosure resulted in a $2.05 decline in Buca's stock price. (*Id.* at ¶ 48.) Undisputedly, neither of these press releases stated anything regarding employee meals or the alleged improper accounting practice. Yet Plaintiffs contend that these disclosures revealed that Buca was not the growth company that Defendants portrayed it to be. (*Id.* at ¶ 139.)

The Court finds that neither of the 2002 press releases revealed anything about the alleged fraud.[2] The 2002 disclosures to which Plaintiffs point do not disclose that Buca's sales figures were overstated or that Buca had improperly accounted for employee meals. Rather, these disclosures announced declining sales. And even considering the allegations regarding these 2002 disclosures combined with the previous disclosures cited by Plaintiffs in the First Amended Complaint, the Court finds that Plaintiffs have not

---

[2] Somewhat illogically, Plaintiffs' responsive brief emphasizes that the 2002 disclosures could not have possibly revealed the alleged fraud. In that brief, Plaintiffs state, "[i]n this case, there is no way that a reasonable investor could or should have discovered that Buca was engaged in accounting fraud arising from improper revenue recognition and improper capitalization of expenses, from the July and October 2002 disclosures of declining same store sales." (Lead Pls.' Mem. in Opp. to Defs.' Motions to Dismiss the SAC at 69.)

pleaded loss causation as to these disclosures and the stock price declines.  The Court recognizes that Plaintiffs need not plead a single formal corrective disclosure that explicitly admits the alleged fraud, but here, none of the purported disclosures alleged by Plaintiffs unveiled the truth of the alleged misrepresentations.  As such, Plaintiffs have not sufficiently pleaded loss causation.  Given this, the Court grants Defendants' motions in this regard.

### B. Scienter

Defendants contend that the Court should dismiss the Complaint because the Plaintiffs have failed to plead facts giving rise to a strong inference that Defendants acted with scienter.  Scienter is "a mental state embracing intent to deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 193 n.12 (1976).  Plaintiffs must plead facts giving rise to both a reasonable and strong inference of scienter.  *Kushner v. Beverly Enters., Inc.*, 317 F.3d 820, 827 (8th Cir. 2003).  The Supreme Court recently clarified the pleading standard for the strong inference of scienter, holding:

> It does not suffice that a reasonable factfinder could infer from the complaint's allegations the requisite state of mind.  Rather, to determine whether a complaint's scienter allegations can survive threshold inspection for sufficiency, a court governed by § 21D(b)(2) [of the Private Securities Litigation Reform Act of 1995] must engage in a comparative evaluation; it must consider, not only inferences urged by the plaintiff . . . but also competing inferences rationally drawn from the facts alleged.  An inference of fraudulent intent may be plausible, yet less cogent than other, nonculpable explanations for the defendant's conduct.  To qualify as "strong" within the intendment of § 21D(b)(2) . . . an inference of scienter must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent.

*Tellabs*, 127 S. Ct. at 2504-05.  The Court will address each of Plaintiffs' three bases for scienter separately.

### 1.     Employee meals

In the Second Amended Complaint, Plaintiffs allege that Buca, via Micatrotto and Gadel, improperly included employee meals in its revenue in order to inflate its reported numbers for same store sales.  (SAC at ¶¶ 25-49, 67-75.)  Plaintiffs contend that due to Micatrotto's position at Buca, his micromanagement of Buca, and his experience in the restaurant industry, Micatrotto knew that booking employee meals as revenues violated GAAP.  (SAC ¶¶ 18, 81.)  Specifically, Plaintiffs state that "[n]o reasonable person with extensive experience in the restaurant industry, as did both Micatrotto and Gadel, could have thought it appropriate to account for meals given away to employees as if they had been sold to the public.  In addition, as a CPA, Gadel would have been especially aware of the impropriety of this accounting treatment."  (*Id.* at ¶ 81.)

In the Second Amended Complaint, Plaintiffs reference a March 2004 Affidavit of Dan Skrypek, then Buca's controller, regarding Buca's 2001 decision to book meals for headquarter employees as revenue and to double that amount in 2002.  (*Id.* at 40.)  Plaintiffs have also added an allegation related to a whistleblower action filed by Wade Lerbs, Buca's Cash Manager from October 1998 through October 2002.  (*Id.* at ¶ 86.)  According to the Second Amended Complaint, Lerbs brought his Sarbanes-Oxley whistleblower claim because he was fired after reporting certain accounting irregularities, including the treatment of employee meals, to Buca senior managers.  (*Id.*)  Plaintiffs

9

contend that when Lerbs complained to Joe Kohaut, Buca's Vice President of Food and Beverage and Purchasing, about Micatrotto and Gadel's decision to double the amount Buca paid for employee meals, Kohaut responded, "we should really be paying $5000 per day to really boost those sales." (*Id.*) Yet Plaintiffs contend that Buca failed to investigate these alleged accounting irregularities. (*Id.* at ¶ 87.) Ultimately, Lerbs's whistleblower claim was denied. (Mem. of Def. Joseph P. Micatrotto in Supp. of His Mot. to Dismiss Pls.' Second Am. Consolidated Compl. ("Micatrotto Mem."), Exs. A, B.)

Defendants assert that the Second Amended Complaint's allegations, however, are silent as to whether any of the individual defendants knew or believed that the practice of booking employee meals as sales violated GAAP. Defendants further assert that Plaintiffs' allegations regarding the whistleblower complaint do not indicate anything that would have placed Micatrotto on notice that the booking of employee meals as sales violated GAAP. Moreover, Micatrotto points out that the whistleblower complaint never mentioned Micatrotto.

As to Plaintiffs' allegations regarding employee meals, the Court finds that Plaintiffs have failed to plead facts giving rise to a reasonable and strong inference of scienter. The Second Amended Complaint still offers no particularized allegations that Defendants knew or believed that the manner in which Buca accounted for employee meals violated GAAP. Plaintiffs allege that Micatrotto and Gadel must have known that the manner in which they accounted for employee meals violated GAAP, given their industry experience. But Plaintiffs do not allege that Micatrotto or Gadel actually knew

that this practice violated GAAP.  Moreover, Plaintiffs do not allege that the whistleblower action challenged the underlying policy of recording employee meals.  And any additional allegations regarding confidential informant CS-5's statements that the accounting practice was improper do not create a strong inference of scienter because they do not show that CS-5 told anyone that the practice violated GAAP.  As to any remaining assertions regarding the alleged employee meal scheme in the Second Amended Complaint, Plaintiffs have merely recycled allegations that the Court already rejected in the October 16, 2006 Order.  For these reasons, the Court finds that Plaintiffs have not plead facts demonstrating a strong inference of scienter.  Defendants' Motions to Dismiss are granted in this regard.

### 2.     Capitalization of Expenses

The Second Amended Complaint also asserts that Buca, via Micatrotto and Gadel, engaged in a scheme to artificially inflate net earnings by improperly capitalizing expenses over extended financial reporting periods, rather than taking the entire expenses in the reporting periods required by GAAP.  (*Id*. at 50-75.)  The Second Amended Complaint contends that this practice began in 2000.  (*Id*. at 51.)

Specifically, Plaintiffs assert that Buca improperly capitalized at least $713,000 in expenses incurred in connection with a bill-back arrangement with certain vendors.  (*Id*. at ¶ 56.)  Plaintiffs contend that Gadel orchestrated this alleged scheme.  (*Id*. at ¶ 57.)  Plaintiffs also assert that Buca improperly capitalized at least $4.67 million in repair and maintenance expenses and general and administrative expenses at the direction of Gadel

and Buca's former controller, Dan Skrypek. (*Id*. at ¶ 58.) Further, Plaintiffs contend that Buca, at the direction of Gadel and Skrypek, improperly capitalized at least $1.5 million of invoices submitted as part of an arrangement involving High Wire Networks, Inc. ("High Wire"), a telecommunications company, and EDP Computer Systems ("EDP"), a Buca supplier connected with High Wire. (*Id*. at ¶ 62.) Finally, Plaintiffs assert that Buca, at Gadel and Skrypek's direction, improperly capitalized at least $1 million in what should have been expenses for employee salaries as payments to independent contractors. (*Id*. at ¶ 63.)

The Court finds that the Second Amended Complaint fails to allege facts that support a strong inference that Defendants violated GAAP or believed that what they were doing was improper with regard to the capitalization of expenses. In support of the allegations of improper capitalization of expenses, Plaintiffs point to one specific example that occurred within the Class Period—namely, Plaintiffs' claim that Buca capitalized some of an assistant controller's salary sometime in 2002. (*Id*. at ¶ 64.) Otherwise, Plaintiffs have not set forth any dates on which such improper capitalization of expenses occurred or any specific transactions related to these alleged events.

Plaintiffs also fail to allege specific facts from which the Court could infer Defendants' actual knowledge of wrongdoing. Like the First Amended Complaint, the Second Amended Complaint pleads no facts demonstrating that anyone at Buca knew or believed that the method by which expenses were capitalized was improper at the time the original financial results were posted. (October 16, 2006 Order at 26.) Nor does the

Second Amended Complaint plead facts supporting the inference that Defendants knowingly or intentionally violated GAAP. As such, Plaintiffs' claims regarding the alleged improper capitalization of expenses fail. Defendants' Motions to Dismiss are granted in this regard.

### 3.     Internal Controls

Finally, the Second Amended Complaint alleges that the internal controls at Buca were grossly deficient, Buca hid these deficiencies from investors, and the deficiencies allowed Defendants' to implement their scheme of fraud. (*Id*. at 101-138.) Specifically, Plaintiffs tie their allegations regarding inadequate internal controls to the misuse of company funds by Gadel and Micatrotto. Many of the allegations are related to the criminal complaints against Gadel and Micatrotto and to Buca's suit for breach of fiduciary duty against these officers. (*Id*.)

In response, Defendants first assert that the alleged misstatements in the Sarbanes-Oxley certifications are not actionable in a claim for securities fraud. Second, to the extent that Plaintiffs argue that the alleged inadequate internal controls support an inference of scienter, Defendants contend that these allegations are not tied to the purportedly fraudulent accounting schemes raised in the Second Amended Complaint— namely, the accounting for employee meals and the capitalization of expenses. To this end, Defendants further argue that the Second Amended Complaint does not plead with the requisite particularity what Buca's internal controls were, how they were deficient, or that Defendants had knowledge of these deficiencies. Finally, to the extent that Plaintiffs

might assert that the alleged inadequate controls form the basis of an independent claim for securities fraud, Defendants assert that Plaintiffs have failed to specifically plead the representations of material fact that operated as a fraud or deceit, they have failed to plead scienter with particularity, and they have failed to make an adequate showing of loss causation.

The Court finds that Plaintiffs have not set forth a basis for scienter based on their allegations regarding the allegedly inadequate internal controls. The Court finds persuasive case law that recognizes that a Sarbanes-Oxley certification can be probative of scienter in limited circumstances. (*See, e.g., Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1266 (11th Cir. 2006) (holding that a Sarbanes-Oxley certification is probative of scienter if "the person signing the certification had reason to know, or should have suspected, due to the presence of glaring accounting irregularities or other 'red flags,' that the financial statements contained material misstatements or omissions".) Here, however, the Court need not reach the issue of whether inadequate internal controls give rise to an actionable securities fraud claim under section 10(b) because even if such was the case, Plaintiffs' pleadings are insufficient to state a claim.

First, to the extent that Plaintiffs assert that the allegedly inadequate internal controls support an inference of scienter, Plaintiffs do not plead how the inadequate internal controls allowed Defendants to engage in the allegedly fraudulent scheme for accounting for employee meals or capitalizing expenses. Rather, Plaintiffs attempt to weave in issues surrounding the criminal actions against Micatrotto and Gadel—matters

that undisputedly are unrelated to the alleged GAAP violations.  Plaintiffs have not tied any internal control deficiencies to the purportedly fraudulent accounting schemes regarding employee meals and capitalization of expenses.

Moreover, to the extent that Plaintiffs attempt to raise an independent claim based on the allegedly inadequate internal controls, Plaintiffs have not made a sufficient showing of loss causation.  Plaintiffs have not pleaded how the alleged misstatements in the Sarbanes-Oxley certifications inflated Buca's stock price.  Nor have Plaintiffs asserted a connection between the alleged lack of internal controls with a decline in stock price.  In the absence of loss causation, Plaintiffs have not pleaded a claim regarding the alleged inadequate internal controls.  Defendants' Motions to Dismiss are granted on this issue.

**III.    Section 20(a) Claim**

The Second Amended Complaint also alleges claims against the Individual Defendants for violations of section 20(a) of the Securities Exchange Act.  "Section 20 of the Exchange Act extends liability for fraudulent conduct under Section 10(b) to individual controlling persons found to have committed securities fraud."  *In re Xcel Energy, Inc.*, 286 F. Supp. 2d 1047, 1059 (D. Minn. 2003) (citing 15 U.S.C. § 78t(a)).  As noted in the Court's October 16, 2006 Order, because Plaintiffs have failed to properly plead a section 10(b) claim, their section 20(a) claim must also be dismissed.  *See Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 550 n.12 (8th Cir. 1997).

### IV. Motion to Strike

Based on the Court's disposition of this matter, Plaintiffs' Motion to Strike or, in the Alternative, to File a Surreply, is denied as moot.

Accordingly, **IT IS HEREBY ORDERED** that:

1. Defendants Buca and Mihajlov's Motion to Dismiss the Second Consolidated Amended Class Action Complaint (Doc. No. 83) is **GRANTED**.

2. Defendant Micatrotto's Motion to Dismiss the Second Consolidated Amended Class Action Complaint (Doc. No. 91) is **GRANTED.**

3. Defendant Gadel's Motion to Dismiss the Second Consolidated Amended Class Action Complaint (Doc. No. 88) is **GRANTED**.

4. The Second Amended Consolidated Class Action Complaint for Violations of the Federal Securities Laws (Doc. No. 82) is **DISMISSED WITH PREJUDICE**.

5. Plaintiffs' Motion to Strike or, in the Alternative, to File a Surreply, (Doc. No. 114) is **DENIED AS MOOT**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  August 30, 2007         s/Donovan W. Frank
                                DONOVAN W. FRANK
                                Judge of United States District Court